RIDGELY, Justice,
for the Majority:
Defendant-below/Appellant Freddie Flonnory (“Flonnory”) appeals from a conviction in the Superior Court of felony Driving Under the Influence of Alcohol (“DUI”), under 21 Del. C. § 4177(a) and (d)(3). Specifically, Flonnory challenges the Superior Court’s denial of his motion to suppress the results of a blood draw. Flonnory raises two claims on appeal. First, Flonnory contends that the trial court erred in holding that Delaware’s implied consent statute, 21 Del. C. § 2740(a), exempted the blood draw from the Fourth Amendment’s warrant requirement. Second, Flonnory contends that there was no voluntary consent, and that the trial court erred when it did not perform a Fourth *1062 Amendment totality of the circumstances analysis to determine whether Flonnory had in fact consented to the blood draw.
By its very nature, a blood draw is an intrusion into the human body that is fundamentally different from a breath sample.[1] The General Assembly has acknowledged that the “normal rules of search and seizure law” apply in this context.[2] And the normal rules require a search warrant for a blood draw absent a recognized exception to the warrant requirement.
When the State relies upon the consent exception to the warrant requirement to admit a chemical test of a blood draw, a Fourth Amendment totality of the circumstances analysis applies. Such an analysis was not applied in this case by the Superior Court. Accordingly, we remand this matter for further proceedings consistent with this Opinion.
I. Facts and Procedural History[3]
On September 8, 2012, Delaware State Police Corporal Andrew Pietlock (“Cpl. Pietlock”) pulled over Flonnory’s automobile after he observed Flonnory twice fail to signal during a turn. Cpl. Pietlock approached the driver’s side of Flonnory’s vehicle, where he immediately noticed that Flonnory’s eyes were glassy and bloodshot. Cpl. Pietlock also observed an open beer bottle in the vehicle, and smelled the odor of alcohol on Flonnory’s breath. When Cpl. Pietlock asked Flonnory how much he had to drink that night, Flonnory admitted to having one beer in addition to the beer seen in his vehicle.
Based on his observations, Cpl. Pietlock suspected Flonnory was intoxicated, and administered several field sobriety tests. Flonnory failed the field sobriety tests he was asked to perform.[4] Cpl. Pietlock then requested that Flonnory take a Portable Breath Test (“PBT”). When Flonnory asked whether he had to take the PBT, Cpl. Pietlock informed Flonnory that he did not have to take “any test,” but that if he did not take the PBT, he would be ' arrested for DUI. Despite being informed of his right to refuse, Flonnory took the PBT. The PBT was administered at 10:02 p.m., at which time the device indicated that Flonnory’s blood alcohol concentration was 0.163, over twice the legal limit. Cpl. Pietlock arrested Flonnory for suspicion of DUI.
Flonnory was transported to the police station, where he was advised that a phle-botomist was going to conduct a blood draw. Cpl. Pietlock did not ask Flonnory for permission nor did he request a search warrant for authority to draw Flonnory’s blood.[5] At 11:36 p.m., Flonnory’s blood *1063 was drawn by the phlebotomist. During the blood draw, Flonnory told the phlebo-tomist “that’s a good vein, don’t miss it.”[6] Flonnory’s blood was analyzed by the Delaware State Police Crime Lab, which found a blood alcohol concentration of 0.14.
On October 22, 2012, Flonnory was indicted on one count for DUI and one count for Failure to Use Turn Signal.[7] In December 2012, Flonnory filed a motion to suppress the results of the blood draw, claiming that the blood draw violated his rights under the Fourth Amendment. The trial court held a suppression hearing, but reserved its decision pending the United States Supreme Court’s decision in Missouri v. McNeely.[8] After McNeely was decided, the trial court determined that McNeely’s holding was inapplicable to Delaware’s implied consent statute. Accordingly, the trial court denied Flonnory’s motion, and found that Flonnory provided consent under Delaware’s implied consent statute simply by driving his vehicle. After a two-day jury trial, Flonnory was convicted of DUI. This appeal followed.

II. Discussion

A trial court’s decision to grant or deny a motion to suppress evidence is reviewed for an abuse of discretion.[9] A trial court’s legal decisions are reviewed de novo.[10] “ ‘To the extent the trial judge’s decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous.’ ”[11]
The United States and Delaware Constitutions protect the right of persons to be secure from “unreasonable searches and seizures.”[12] Generally, “[s]earches and seizures are per se unreasonable, in the absence of exigent circumstances, unless authorized by a warrant supported by probable cause.”[13] In addition to exigent circumstances, a recognized exception to the warrant requirement is for searches that are conducted pursuant to a valid consent.[14] “Consent may be express or implied, but this waiver of Fourth Amendment rights need not be knowing and intelligent.” [15]
*1064 A blood draw is fundamentally different from a breath test because it involves an intrusion into the human body. As the United States Supreme Court explained nearly five decades ago:
Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.[16]
More recently, the Supreme Court has stated that “[s]uch an invasion of bodily integrity implicates an individual’s ‘most personal and deep-rooted expectations of privacy.’ ”[17] This is why a search warrant is required in the absence of exigent circumstances [18] or consent. In order to determine whether consent was given voluntarily, courts examine the totality of the circumstances surrounding the consent, including:
(1) defendant’s knowledge of the constitutional right to refuse consent; (2) defendant’s age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with police; and (4) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior.[19]
We have applied this very analysis before in the context of a blood draw. For example, in Higgins v. State, Higgins, who was driving intoxicated, was involved in single car accident.[20] When a Newark police officer arrived at the scene, he observed that Higgins’ eyes were bloodshot and glassy, and smelled the odor of alcohol emanating from him.[21] The officer took Higgins to Christiana Hospital, where he was asked to sign a written consent form so that hospital personnel could draw his blood.[22] When Higgins refused, the officer called a phlebotomist to come to the hospital to draw Higgins’ blood.[23] While waiting for the phlebotomist, the officer told Higgins that if he refused the blood draw, he would lose his driver's license for one year, and also admonished Higgins that “he was lucky that he hadn’t hit a kid that day.”[24] Higgins, eventually stated “fine, I’ll give blood,” and cooperated while the phlebotomist drew his blood.[25] The blood draw revealed Higgins’ blood alcohol concentration to be 0.20.[26]
Higgins was arrested and indicted for felony DUI. Thereafter, he moved to suppress the blood draw results, claiming that his consent was not given voluntarily due to the officer’s (i) calling a phlebotomist *1065 after he had refused to sign a hospital consent form to the blood draw, (ii) (possibly) telling the defendant that he would lose his license if he did not consent, and (iii) admonishing Higgins for his dangerous conduct.[27] The trial court denied the motion, and found that, under the totality of the circumstances, Higgins had voluntarily consented to having his blood drawn. On appeal, we affirmed the trial court’s ruling. In so doing, we reviewed the totality of the circumstances as found by the trial court, and explained:
[T]he totality of the circumstances establishes that Higgins voluntarily consented to the blood draw. Because this constituted his third DUI offense, Higgins was not an ignorant newcomer to the law. No argument is made that Higgins’ age, intelligence, or education precluded his voluntary consent. And, [the officer’s] testimony shows that Higgins was generally cooperative with police .... Fourth Amendment jurisprudence does not forbid a law enforcement officer from attempting to persuade an individual to consent to a search. Finally, calling the ... phlebotomist did not cause Higgins to acquiesce[ ] to a claim of lawful authority. Neither [the arresting officer] nor the phlebotomist represented that they had authority to draw Higgins blood without his consent. Given the totality of the circumstances, Higgins voluntarily consented to the blood draw.[28]
Notwithstanding this precedent, the State argues that a Fourth Amendment analysis was not required here. We disagree.
The General Assembly has acknowledged that “the normal rules of search and seizure law” apply in determining the admissibility of a chemical test in “any action or proceeding arising out of acts alleged to have been committed by any person while under the influence of alcohol.”[29] A chemical test of a person’s blood is one of the ways the State may prove driving under the influence.[30] The procedure involves “a compelled physical intrusion beneath [one’s] skin and into [one’s] veins to obtain a sample” of blood.[31] Due to the invasive nature of this procedure, a Fourth Amendment totality of the circumstances analysis must be performed when the search is not based upon a warrant or exigent circumstances in order to determine whether a defendant voluntarily consented to the blood draw.[32] Here, the trial court erred when it concluded that “Defendant’s statutory implied consent exempted the blood draw from the warrant requirement”[33] of the Fourth Amendment.
The State argues in the alternative that the totality of the circumstances show that Flonnory voluntarily consented to the blood draw. As we have noted above, express or implied consent may waive Fourth Amendment rights. Whether this *1066 in fact occurred here under the totality of the circumstances is a determination we choose not to make for the first time on appeal. The trial court should determine in the first instance whether Flonnory consented, either expressly or impliedly, to the blood draw. Accordingly, we remand this matter so that the trial court may conduct a proper Fourth Amendment analysis. If the trial court determines, after considering the totality of the circumstances, that the consent exception to the warrant requirement does not apply, it is instructed to grant the motion to suppress, vacate the conviction, and to grant a new trial.
We respectfully disagree with the very thoughtful Dissent. The Dissent focuses on the Supreme Court’s decision in McNeely, and concludes that it has no application to the facts of this case. We recognize that the Court in McNeely did not expressly address the issue of consent. Nevertheless, its reasoning — derived from Schmerber v. California[34] — is directly applicable to the facts of this case. We agree that Delaware’s implied consent statute, as stated by the Supreme Court, remains a “legal tool[] to enforce [Delaware’s] drunk-driving laws and to secure BAC evidence without undertaking war-rantless nonconsensual blood draws.”[35] But the Supreme Court explained in McNeely that, ‘Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances.” [36]
The Dissent expresses concern that requiring police to obtain a warrant before performing a blood draw “would burden police officers and courts with the need to secure a large number of warrants, taking scarce police and judicial time away from other matters.” To the extent this is an extra step, the Delaware Department of Justice has already instructed law enforcement to take it using the technology available here.[37] As noted by the Supreme Court in McNeely, this argument on burden fails to account for technological advances “that allow for the more expeditious processing of warrant applications, particularly in contexts like drunk-driving investigations where the evidence offered to establish probable cause is simple.”[38]

III. Conclusion

This matter is REMANDED for further proceedings consistent with this Opinion. Jurisdiction is not retained.

. See Skinner v. Railway Labor Executives Ass’n, 489 U.S. 602, 625, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (“Unlike blood tests, breath tests do not require piercing the skin and may be conducted safely outside a hospital environment and with a minimum of inconvenience or embarrassment.”).

. 21 Del. C. § 2750(a).

. Unless otherwise noted, the facts and procedural history are taken directly from the Superior Court’s Order denying Flonnory’s motion to suppress. See State v. Flonnory, 2013 WL 3327526 (Del. Super. 2013).

. Flonnory "failed the alphabet, numbers, one-leg stand, and heel-to-toe-tests.” Id. at *2.

. At oral argument before this Court, the State conceded that it has since instructed law enforcement officers to apply for a search warrant under all circumstances before performing a blood draw. Oral Argument at 28:51, 29:35-30:10, Flonnory v. State, No. 156, 2014 (Nov. 19, 2014) ("Post McNeely, warrants are being obtained in every instance. ... Police are not, at this point, relying on the implied consent law.”), available at http://courts.delaware.gov/supreme/oral arguments/.

. Flonnory, 2013 WL 3327526, at *2.

. (A9) The State entered a nolle prosequi on the Failure to Use Turn Signal charge prior to jury selection. (A7)

. Missouri v. McNeely, — U.S. -, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). In McNeely, the Supreme Court held that the natural dissipation of alcohol in a drunk-driving suspect's bloodstream does not constitute a per se exigency in every case to justify drawing the suspect’s blood for testing without a warrant or the suspect's consent. Id. at 1558. McNeely states that whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances. Id. at 1563.

. McVaugh v. State, 2014 WL 1117722, at *1 (Del.2014) (citing Lopez-Vazquez v. State, 956 A.2d 1280, 1284 (Del.2008)).

. Id. (citing McAllister v. State, 807 A.2d 1119, 1122-23 (Del.2002)).

. Id. (quoting Lopez-Vazquez, 956 A.2d at 1284).

. U.S. Const, amend. IV; Del. Const, art. I, § 6.

. Scott v. State, 672 A.2d 550, 552 (Del.1996) (citing Hanna v. State, 591 A.2d 158, 162 (Del.1991)).

. Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218, 221-22, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

. Cooke v. State, 977 A.2d 803, 855 (Del.2009) (citing Schneckloth, 412 U.S. at 241, 93 S.Ct. 2041).

. See Schmerber v. California, 384 U.S. 757, 769, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (internal citations and quotation marks omitted).

. McNeely, 133 S.Ct. at 1558 (quoting Winston v. Lee, 470 U.S. 753, 760, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)).

. The trial court found no exigent circumstances in this case. Flonnory, 2013 WL 3327526, at *5.

. McNeely, 133 S.Ct. at 1558 (citing Schneckloth, 412 U.S. at 241, 93 S.Ct. 2041).

. Higgins v. State, 2014 WL 1323387, at *1 (Del. Apr. 1, 2014).

. Id.

. Id.

. Id.

. Higgins, 2014 WL 1323387, at *1.

. Id.

. Id.

. Id. at *2.

. Id. at *2-3 (internal quotation marks omitted).

. 21 Del. C. § 2750(a).

. 21 Del. C. § 4177.

. Id.

. Our holding is consistent with recent decisions of other State Supreme Courts. See State v. Fierro, 853 N.W.2d 235, 243 (S.D.2014) (ruling that a Fourth Amendment totality of the circumstances analysis must be performed to determine whether consent to a blood draw was voluntary); State v. Wulff, 157 Idaho 416, 337 P.3d 575, 581 (2014) (same); Byars v. State, — Nev. -, 336 P.3d 939, 942 (2014) (same); State v. Butler, 232 Ariz. 84, 87, 302 P.3d 609 (Ariz.2013) (same).

.Flonnory, 2013 WL 3327526, at *6.

. Schmerber, 384 U.S. at 769, 86 S.Ct. 1826 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned.”).

. McNeely, 133 S.Ct. at 1566.

. Id. at 1563.

. See footnote 5, supra.

. McNeely, 133 S.Ct. at 1561-62. The Dissent also posits in footnote 69 that Delaware’s implied consent statute for a chemical test of breath, blood, or urine has a corporate analogue in 8 Del. C. § 3114, which relates to personal jurisdiction. Section 3114 is not at issue here. We have expressly upheld the constitutionality of Section 3114 in Armstrong v. Pomerance, 423 A.2d 174, 177 (Del.1980), and nothing in our Opinion today is intended to overrule that decision or affect the scope of Section 3114’s enforceability.