# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,       )
                            )
                            )
                            )
v.                         )      Cr. A. No. 1503018070
                            )
MICHAEL W. DURHAM,      )
                            )
Defendant.          )
                            )

Erik C. Towne, Esquire
Department of Justice
820 N. French Street, 7th Fl.
Wilmington, DE 19801
*Attorney for the State of Delaware*

Joe Hurley, Esquire
1215 King Street
Wilmington, DE 19801
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS

RENNIE, J.

On November 1, 2016, the Court heard testimony and argument on Defendant's Motion to Suppress (the "Motion") in this case. This is the Court's Decision on the Motion.

## I. Facts

On March 28, 2015, New Castle County Police Officer Zachery Sherwood ("Officer Sherwood") responded to a single vehicle accident at the intersection of Jaymar Boulevard and Aspen Drive. Officer Sherwood arrived at the scene and observed an unoccupied vehicle wedged between two trees which were growing on the backyard property line in-between two residential homes. A second New Castle County Police Officer then administered field sobriety tests and a Portable Breath Test to Defendant. Based on the testing results and Officer Sherwood's observations, Defendant was placed under arrest and transported to the New Castle County Police Station.

The parties adamantly dispute the sequence of events that occur after Defendant was transported to the police station. Specifically, the parties disagree on whether Officer Sherwood read Defendant the penalty provision in the Implied Consent and Probable Cause Form ("Implied Consent Form") before Defendant's blood was drawn by a phlebotomist. Officer Sherwood testified that he is unable to recall whether he even read the provision to Defendant.

According to the initial testimony of Officer Sherwood, Defendant was placed in a holding cell, the officer drafted the search warrant for the blood draw in another room, and the officer did not ask Defendant for a breath sample. After the officer's search warrant was approved, a phlebotomist drew Defendant's blood at the police station. Officer Sherwood placed Defendant back in his holding cell and filled out the necessary paperwork, including the Implied Consent Form. Defendant was released after all the paperwork was completed.

2

On Cross-examination, Officer Sherwood acknowledged that while he did not recall asking Defendant to submit to the intoxilyzer. He, however, stood by his police report and conceded that he placed Defendant in the intoxilyzer room and requested Defendant to provide a breath sample, which Defendant refused.

According to Defendant, Officer Sherwood brought him back to the police station and asked him to consent to the intoxilyzer test, which Defendant refused. Officer Sherwood then read Defendant the penalty provision of the Implied Consent Form, yet Defendant still refused. The officer then prepared the blood search warrant and submitted it to Justice of the Peace Court 11. Court 11 signed the warrant, at which point a phlebotomist collected Defendant's blood sample at the police station.

During his testimony at the Motion hearing, Officer Sherwood was unable to recall whether he read the penalty provision to Defendant, and whether he filled out the Implied Consent Form in Defendant's presence. On the Implied Consent Form, however, both the Implied Consent box and Probable Cause box were checked.[1] The Officer also acknowledged that he checked the Implied Consent box because Defendant refused to submit to the "intoxilyzer."

## II. Legal Standard

On a motion to suppress, the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause.[2] To satisfy the probable cause standard for a DUI arrest, police "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a

---

[1] By checking the Implied Consent box, the officer is expressly admitting that he "advised the defendant that [his] driving privilege would be revoked for refusal to submit to a chemical test."

[2] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010).

3

DUI offense."[3] This totality consideration is based on "'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"[4] "A probable cause determination may be made based upon 'either the police officer's direct observations or [] hearsay.'"[5]

## III. Discussion

In this case, the sole basis for Defendant's Motion to Suppress is his contention that Officer Sherwood violated 21 *Del. C.* § 2742 when the officer read Defendant the penalty provision of the implied consent statute and proceeded with chemical testing, even after Defendant refused testing.

### A. *Delaware Implied Consent Statutes*

Each state has enacted a version of the Implied Consent Statutes.[6] Under the Delaware implied consent statutes, if a person "drives, operates, or has in [his] actual physical control a vehicle," then the driver has implicitly consented to chemical testing.[7] Thus, in a circumstance where such a driver is subject to chemical testing, the officer can inform the driver of the "penalty of revocation for such refusal" prior to having the chemical test performed or he can

---

[3] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

[4] *State v. Cardona*, 2008 WL 5206771, at *3 (Del. Super. Dec. 3, 2008) (quoting *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993)).

[5] *Id.* (quoting *Barnett v. Division of Motor Vehicles*, 514 A.2d 1145, 1146 (Del. Super. 1986)).

[6] *See* Christopher M. Peterson, Note, *Irrevocable Implied Consent: The "Roach Motel" In Consent Search Jurisprudence*, 51 AM. CRIM. L. REV. 773, 784 (2014) (noting all fifty states have a version of an implied consent statute).

[7] 21 *Del. C.* § 2740 ("Any person who drives, operates or has in actual physical control a vehicle, an off-highway vehicle, or a moped within this State shall be deemed to have given consent, subject to this section and §§ 4177 and 4177L of this title to a chemical test or tests of that person's blood, breath and/or urine for the purpose of determining the presence of alcohol or a drug or drugs."). It is important to note that Delaware's Implied Consent Statutes negate a defendant's expectation of privacy under the Fourth Amendment in his breath, blood, or urine. *State v. Powell*, 2002 WL 1308368, at *4 (Del. Super. June 4, 2002).

have chemical testing performed without the driver's consent, provided the officer possesses probable cause and "takes reasonable steps to conduct such chemical testing."[8]

The language of Section 2742 provides that after being informed of the penalties for refusal, if the driver still refuses chemical testing then the officer cannot proceed with chemical testing.[9] However, the language in Section 2750 of the Delaware Implied Consent Statutes appears to override §2742 for purposes of admissibility in DUI prosecution. Specifically, the language of §2750 provides that even if the officer proceeds to have the driver chemically tested after the driver has been informed and refused, the chemical test results are still admissible in prosecutions for violations of §4177.[10] Hence, a plain reading of §2750 makes it clear that even if the officer administers the chemical test after the penalty provision is read and refused, blood results are admissible, as long as the officer does not violate search and seizure law under the Fourth Amendment.[11] In other words, the officer must have had probable cause to arrest and cannot use excessive force to collect the sample for chemical testing.[12] Importantly, when an officer conducts an intoxilyzer test, Delaware search and seizure law and the Fourth Amendment

---

[8] 21 *Del. C.* § 2742(a) ("If a person refuses to permit chemical testing, after being informed of the penalty of revocation for such refusal, the test shall not be given but the police officer shall report the refusal to the Department. The police officer may, however, take reasonable steps to conduct such chemical testing even without the consent of the person if the officer seeks to conduct such test or tests without informing the person of the penalty of revocation for such refusal and thereby invoking the implied consent law.").

[9] *Id.*

[10] 21 *Del. C.* § 2750 ("Nothing contained in this section shall be deemed to preclude the admissibility of such evidence when such evidence would otherwise be admissible under the law relative to search and seizure law such as when such evidence has been obtained by valid consent or other means making the obtaining of the evidence legal under the Fourth Amendment.").

[11] In *State v. Flonnory*, the dissent noted that *State v. Wolf*—where the drawing of an unconscious person's blood was held to be an illegal search—prompted the General Assembly's adoption of the implied consent statutes, 21 *Del. C.* § 2740 *et seq. See State v. Flonnory*, 109 A.3d 1060, 1067 (Del. 2015) (Strine, C.J., dissenting); *see also State v. Betts*, 2009 WL 388952, at *8 (Del. Super. Feb. 3, 2009) (also noting the historical point that the implied consent laws were adopted to solve the conundrum of performing chemical tests on unconscious suspects).

[12] *Seth v. State*, 592 A.2d 436, 444 (Del. 1991). If the chemical test pertains to blood, then the person who draws the blood must be "qualified to administer" the test. 21 *Del. C.* § 2748; *see also State v. Hartman*, 1984 WL 553534, at *1 (Del. Super. Sep. 4, 1984) (noting that the "statute expressly authorizes medical technicians to withdraw blood, and phlebotomists are medical technicians").

5

require probable cause that the driver was driving under the influence, while a nonconsensual blood draw requires both probable cause and a valid search warrant, or exigency.[13]

Because §2750 appears to override the bar to the admissibility of test results under §2742 in DUI prosecutions, where §2742 is violated, and there are no Fourth Amendment implications, the Court must address the apparent paradox created by the language in these two sections. The Court thus turns to recent case law for guidance on the intersection of §§ 2742 and 2750.

B. *Key Delaware Precedent Concerning Implied Consent*

In 1991, the Delaware Supreme Court in *Seth v. State* held that collecting a defendant's breath sample against his consent did not violate the implied consent laws.[14] In *Seth*, there was disagreement about whether the officer had stated, prior to conducting the intoxilyzer test, "'[a]re you ready to take the test or do you want to go to jail?'"[15] Nevertheless, the parties agreed that the arresting officer failed to read defendant the implied consent law.[16] Defendant argued that the officer was required to read him the implied consent law and that his consent was involuntary because he was threatened with jail-time.[17]

The Court found that Defendant misunderstood the implied consent statutes, as the 1982 and 1983 amendments removed the 1977 version's requirement that a suspect consent to the chemical tests.[18] Importantly, the Supreme Court noted that the amendments added a new section which would "eliminate any defense to the admissibility of the results of chemical tests

---

[13] *State v. Flonnory*, 109 A.3d 1060, 1063-64 (Del. 2015). Delaware's implied consent law also requires that the blood be extracted by "qualified" medical personnel. 21 *Del. C.* § 2746.

[14] *Seth*, 592 A.2d at 438.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 443.

[18] *Id.* at 443-44 (quoting 21 *Del. C.* §2742(a) (1977)) (removing the language that "the test 'shall not be given'" if suspect refuses). The amendments also added language that the officer is allowed to conduct chemical testing "without consent" under §2742. *Id.* at 444.

based on a failure to inform the accused of the implied consent law, where Fourth Amendment concerns are not implicated."[19] Interpreting §§ 2740-42 of the statute, the Court stated:

> The net effect of the amendments is an officer's ability to require a suspect to submit to testing, without that person's consent or a reading of the implied consent law, so long as the officer has probable cause and the degree of force used is not excessive under the Fourth Amendment.[20]

The Court further interpreted §2750(a) in light of the above sections, and stated, "even if the officer had violated the implied consent law, any argument to exclude the evidence is irrelevant. Section 2750(a) eliminates any defense to admissibility not implicating the Fourth Amendment."[21] Because the Delaware Supreme Court relied on the trial court's determination that the officer did not threaten the suspect, the Court found no Fourth Amendment violation.[22] Thus, the intoxilyzer test results were admissible.[23]

In *State v. Powell*, the Delaware Superior Court grappled with whether a police officer was required to inform a suspect of his right to refuse chemical testing in order for the test to be admissible.[24] The Court began its analysis by stating that a chemical test, which did not violate the Fourth Amendment, was admissible in a DUI prosecution under §2750(a).[25] Relying on *Seth*, the Superior Court dismissed defendant's argument that the police officer failed to properly read him the refusal provision according to §§ 2741 and 2742.[26] First, the Court noted that

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 445. This Court does not view the police officer's omission of the penalty provision in *Seth*—versus an admission—to render *Seth* inapplicable to this case. The Supreme Court's pre-emptive language in *Seth* and §2750's language of "informing or failure to inform" clearly applies in both situations.

[22] *Id.*

[23] *Id.*

[24] *See State v. Powell*, 2002 WL 1308368, at *3 (Del. Super. June 4, 2002)

[25] *Id.* ("defendant's rights must be analyzed under Fourth Amendment search and seizure law, because when the police have probable cause to arrest a defendant and a bodily sample is appropriated '[s]ection 2750(a) [of Title 21] eliminates any defense to admissibility not implicating the Fourth Amendment.'" (quoting *Seth v. State*, 592 A.2d 436, 445 (Del. 1991))).

[26] *Id.* at *4.

§2741 does not require a defendant to be notified of his right to refuse.[27]  Second, similar to the present case, the Superior Court was unconcerned with the record's ambiguity as to whether the defendant was informed of the penalty provision orally or in writing because §2750 rendered the issue moot when Fourth Amendment concerns were not implicated.[28]

In *State v. Baffone*, this Court held that evidence from a blood draw was admissible in a DUI prosecution despite the officer administering the chemical test after he recently received informed refusal from the defendant.[29]  This Court refused to read §2742(a) in a vacuum, especially when §2750(a) patently contravenes the former section.[30]  Section 2750 was interpreted as "clearly provid[ing] that the results of a chemical test are admissible at trial if the normal rules of search and seizure permit admissibility."[31]

## IV. Analysis

Regardless of whether Officer Sherwood informed Defendant of the penalty provision prior to conducting the chemical test, the chemical blood results are admissible at trial under §2750.  The Delaware Supreme Court established clear precedent in *Seth v. State*.  *Seth* states that under §2750, the chemical test is admissible if the Fourth Amendment is not violated, regardless of whether the officer informs the suspect of the penalty provision before administering the test.[32]

---

[27] *Id.* at *4.

[28] *Id.* at *4 & n.12.

[29] *See State v. Baffone*, 2008 WL 4726436, at *1-3 (Del. Com. Pl. Oct. 23, 2008).  This Court has addressed the implied consent statutes more recently, but those opinions do not address the intersection between §§ 2742 and 2750. *See, e.g., State v. Sansone*, Cr.A. No. 1306018766, at *6 (Del. Com. Pl. July 11, 2014) (denying a suppression motion because the reading of the implied consent form was void post search warrant application).

[30] *Id.* at *1.

[31] *Id.* at *2.

[32] *Seth*, 592 A.2d at 445 ("even if the officer had violated the implied consent law, any argument to exclude the evidence is irrelevant. Section 2750(a) eliminates any defense to admissibility not implicating the Fourth Amendment").

8

The briefs before this Court rely heavily on *State v. Cardona* and *State v. Betts*.[33] If *Cardona* and *Betts* were the extent of precedent available to this Court, then the officer's inability to recall the sequence of events would potentially be problematic. However, these cases are inapposite since neither case addresses the intersection of §2742(a) and §2750.[34] Indeed, §2750 renders any version of events regarding the sequence of the reading of the penalty provision and blood draw irrelevant. Thus, whether Officer Sherwood read the penalty provision prior to requesting the intoxilyzer and had Defendant's blood drawn after Defendant refused, or the officer filled out the Implied Consent Form when he completed the paperwork post-blood draw, the law does not necessitate a finding of fact. Whichever version is accurate, 21 *Del. C.* § 2750(a) deems the Officer's mistake immaterial to this Court's present determination.

The parties' failure to defer to *Seth* is understandable since precedent has generally ignored the hierarchy of §§ 2742(a) and 2750(a). Perhaps the General Assembly could resolve

---

[33] Defendant also reads the Delaware Supreme Court's analysis in *Flonnory* as supporting the proposition that once a suspect is informed of the penalty provision, the chemical test cannot be performed. *Defendant's Memorandum of Law In Considering the Inadmissibility of Chemical Test Results When the Arresting Policeman Has Instructed the Arrestee Regarding the Impact of Refusal Pursuant to 21 Del. C. §2740* at 5. Defendant candidly admits that the decision does not expressly support his conclusion. *Id.* at 5 n.5. *Flonnory* is not cited in the *State's Response to Defendant's Motion to Suppress and Memorandum of Law.*

In *State v. Flonnory*, the Delaware Supreme Court addressed a different issue than the present case. There, the issue was whether a warrantless blood draw was reasonable under the Fourth Amendment, and the Court interpreted *Missouri v. McNeely* to require a trial court to apply a totality of the circumstances test when there was neither warrant nor exigency. *See State v. Flonnory*, 109 A.3d 1060, 1062-64 (Del. 2015); *see also Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013) (confronting the question of whether "the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations").

[34] In *State v. Cardona*, defendant argued that a blood draw at a police station—instead of a hospital—was a *per se* unreasonable search and seizure under the Fourth Amendment, despite not objecting when his blood was drawn by a phlebotomist. *See State v. Cardona*, 2008 WL 5206771, at *1-2 (Del. Super. Dec. 3, 2008); *see also State v. Crespo*, 2009 WL 1037732 (Del. Super. Apr. 17, 2009). The Court disagreed. *Cardona*, 2008 WL 5206771, at *7-9. In the Court's analysis, it reiterated *Seth*'s interpretation of §§ 2740-2742, but did not mention §2750(a). *Id.* at *3-4. *State v. Betts* concerned whether a police officer could inform the suspect of his right to refuse a blood draw and still administer the chemical test. *See State v. Betts*, 2009 WL 388952, at *3-4 (Del. Super. Feb. 3, 2009). The officer had checked the probable cause box on the Implied Consent Form, which indicated the officer would simply proceed with the chemical test and would not inform the suspect of the penalty provision; however, the officer testified at trial that he did read the penalty provision to the defendant before having the defendant's blood drawn. *Id.* at *3. Because the defendant did not resist the blood test, the Court found the search and seizure to be reasonable under the Fourth Amendment. *Id.* at *7. The court again focused solely on §2742. *Id.* at *8-10. The *Betts* Court did express the historical point that the implied consent laws were adopted to solve the conundrum of performing chemical tests on unconscious suspects. *Id.* at *8.

9

the fog in the precedent's narrative. The State did mention §2750 briefly toward the end of the *State's Response To Defendant's Motion to Suppress And Memorandum of Law*; however, the State failed to discuss §2750's Fourth Amendment considerations after arguing that Officer Sherwood had probable cause to arrest Defendant. The State also briefly mentioned §2750 in its closing argument at the Motion hearing, and defense counsel retorted that the section was inapplicable, yet §2750 remained an afterthought in the parties' arguments.

Ironically, the language of §2750 is dispositive in the present case. Turning to Fourth Amendment considerations,[35] Defendant makes no argument and, indeed, the record is clear that Officer Sherwood had probable cause to arrest Defendant for suspicion of driving under the influence.[36] Likewise, Defendant postulates no argument, and there are no facts to suggest, that Officer Sherwood physically forced Defendant to submit to the blood draw after Defendant refused, which would trigger a totality of the circumstances analysis into whether Defendant's consent was voluntary.[37] Finally, Defendant does not dispute that a qualified medical personnel drew his blood.[38] Therefore, because the implied consent law and the Fourth Amendment were followed in administering the blood test, the test results are admissible at trial under 21 *Del. C.* § 2750.

---

[35] *See State v. Hobbs*, 2015 WL 3507963, at *3 (Del. Super. May 29, 2015) ("the Delaware Supreme Court reads § 2750 as adding that, even if the right to refusal is not revealed, the evidence is, nonetheless, admissible, so long as Fourth Amendment concerns are not implicated. The U.S. Supreme Court has clarified that Fourth Amendment considerations are relevant where there is no probable cause, and the drawing of blood is not consensual." (footnotes omitted) (citing *Missouri v. McNeely*, 133 S. Ct. 1552 (2013))); *see also State v. Powell*, 2002 WL 1308368, at *3 (Del. Super. June 4, 2002) ("defendant's rights must be analyzed under Fourth Amendment search and seizure law, because when the police have probable cause to arrest a defendant and a bodily sample is appropriated '[s]ection 2750(a) [of Title 21] eliminates any defense to admissibility not implicating the Fourth Amendment.'" (quoting *Seth v. State*, 592 A.2d 436, 445 (Del. 1991))).

[36] *See generally State v. Maxwell*, 624 A.2d 926 (Del. 1993) (blood draw and probable cause analysis); *State v. Pratt*, 1984 WL 560777 (Del. Com. Pl. Aug. 15, 1984) (blood draw and probable cause analysis).

[37] *See State v. Cullen*, 2016 WL 520997, at *3 (Del. Super. Feb. 9, 2016) (finding defendant coerced into giving his consent for the blood draw and following a totality of the circumstances analysis).

[38] *See State v. Hartman*, 1984 WL 553534, at *1 (Del. Super. Sep. 4, 1984) ("[§2746] expressly authorizes medical technicians to withdraw blood, and phlebotomists are medical technicians").

## V.    Conclusion

For the foregoing reasons, Defendant's **Motion to Suppress is DENIED** with prejudice.

**IT IS SO ORDERED** this 17th day of January, 2017. Trial in this matter will be scheduled forthwith.

Sheldon K. Rennie,
Judge