# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | |
| | ) | I.D. 1809011229 |
| GLENFORD BLACKWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

Date Submitted: January 17, 2020
Date Decided: February 27, 2020

*Upon Defendant Glenford Blackwood's Motion to Suppress*
**Denied.**

James K. McCloskey, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for State.

Joseph S. Grubb, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for State.

Joe Hurley, Esquire, Wilmington, Delaware, Attorney for Defendant.

**SCOTT, J.**

1

Before the Court is Defendant Glenford Blackwood's ("Defendant") Motion to Suppress. Therein, Defendant challenges a search warrant authorizing the search of his cell phone and related data. The Court has reviewed and considered the parties' written submissions, as well as evidence provided and arguments made by the parties at the suppression hearings. For the following reasons, Defendant's Motion to Suppress is DENIED.

## Findings of Fact

On June 17, 2018, two individuals were shot and killed at 1 Lloyd Street sometime after 1:00 am ("Shooting"). The State has brought charges against Defendant for his alleged role in these killings.

On June 22, 2018, the police searched Defendant's home pursuant to a search warrant. During the course of this search, police seized Defendant's cell phone, which was charging in the living room. After the police executed the search warrant for Defendant's home, Defendant accompanied the police to the station for questioning. This questioning began around 7:00 am on June 22, 2018 and ended around 6:30 pm on June 22, 2018.

Defendant verbally provided the police with his phone's passcode around 8:36 am. Defendant wanted the police to verify his alibi for the night of June 17, 2018 and told the police that they could find the contact information for an alibi witness in his cell phone. Defendant was unaware that the police were in the process of

2

obtaining a search warrant for his cell phone when he verbally provided his passcode to the officer. The police obtained a warrant ("Warrant") to search Defendant's phone from the Justice of the Peace court around 12:51 pm on June 22, 2018. Because the police were having trouble opening Defendant's phone based on his description of the pattern passcode, Defendant physically unlocked the cell phone for the police around 2:20 pm. When Defendant unlocked the phone for the police, Defendant was unaware that the police had obtained the Warrant.

On June 27, 2018, an officer returned to Defendant's home and asked Defendant to sign a consent form for the search of "all [of the] digital contents of" Defendant's cell phone. Defendant signed the consent form without objection. At this time, Defendant also was unaware that the police had obtained the Warrant.

The Court held two suppression hearings for this motion. The first hearing, on November 18, 2019, focused on the scope of Defendant's consent to the search of his cell phone. Defendant testified that he gave the police officers the passcode to his cell phone because he wanted the police to verify his alibi for the night of the shooting. Defendant testified that he understood "verifying his alibi" to mean contacting potential alibi witnesses and checking to see if his phone was "pinging" in Glen Mills, Pennsylvania.[1]

---

[1] Letter to Judge Scott from Deputy Attorneys General James K. McCloskey and Joseph S. Grubb Attach 1, at 20:1–19, 22:18–21, Jan. 27, 2020 (Excerpt of Defendant's testimony from the November 18, 2019 suppression hearing).

3

The second hearing, on January 17, 2020, focused on how the police obtained the items of evidence that Defendant seeks to suppress. Detective Reid testified about the different sources the police used to obtain information from Defendant's cell phone. First, Detective Reid testified that the police subpoenaed Google for Defendant's GPS location information and internet search history; in the subpoena to Google, Detective Reid included Defendant's cell phone number and the cell phone's IMEI number. Defendant gave the police his cell phone number during the June 22nd interview. The cell phone's IMEI number was obtained from the search of the cell phone pursuant to the Warrant; however, Detective Reid testified that the police could have also obtained the IMEI number by subpoenaing records from Defendant's cell phone provider. Second, Detective Reid testified that the police subpoenaed records from Metro PCS—Defendant's cell phone provider. Detective Reid testified that the police obtained Defendant's cell phone provider by searching Defendant's cell phone number in their systems and by searching Defendant's phone pursuant to his consent and the Warrant. Finally, Detective Reid testified that he knew to subpoena records from Google because Defendant's cell phone was an Android, which usually requires a Google account to function. Detective Reid testified that the officers found Defendant's Google account information during their search of Defendant's cell phone and also by searching Defendant's name on Spokeo.

4

## Parties' Assertions

On July 15, 2019, Defendant filed a motion to suppress all items of evidence the police obtained pursuant to the Warrant. Defendant argues that the Warrant fails to satisfy the particularity requirement because it authorizes the seizure of "any and all information that may identify suspects or co-conspirators." Defendant argues that the Warrant is akin to a "general warrant" and that the Warrant authorizes a search which is broader than the probable cause upon which the Warrant was based. Finally, Defendant contends that there was no logical nexus between the facts gathered in the investigation and the items which were sought to be seized.

In response, the State argues that the issuing magistrate could reasonably conclude from the four corners of the Warrant that the police sought GPS and communication data to determine Defendant's location around the time of the homicide. The State acknowledges that the Warrant did not limit the search with particularity and recommends this Court excise the evidence that is outside the scope of probable cause and only admit the location and communication evidence from June 17, 2018. The State further argues that all evidence obtained from Defendant's phone should be admissible due to Defendant's lawful consent to the search of the entire contents of his phone. Finally, the State notifies this Court that if this Court finds the search of Defendant's phone invalid, then the police will obtain

Defendant's location and search history through an independent search warrant for Defendant's Google data.

In a later submission, Defendant identified the specific items of evidence which Defendant seeks to have suppressed. Defendant asks this Court to suppress: 1) Defendant's cell site location information from June 16 to June 17, 2018; 2) Defendant's internet search history from June 17 to June 22, 2018; and 3) a photograph of Defendant holding a firearm from August 2017.[2]

## Standard of Review

On a motion to suppress evidence collected pursuant to a warrant, the defendant bears the burden of proving that the search violated his rights under the U.S. Constitution, the Delaware Constitution, or Delaware statutory law.[3] The defendant must prove his rights were violated by a preponderance of the evidence.[4]

## Discussion

### A.    Sufficiency of the Warrant

Under the Fourth Amendment to the U.S. Constitution, citizens have the right to be free from unreasonable searches and seizures.[5] A warrant supported by

---

[2] Def.'s Addendum Mem. Supp. Suppression 2, Nov. 25, 2019.
[3] *State v. Preston*, 2016 WL 5903002, at *2 (Del. Super. Sept. 27, 2016) (describing the different standards of review this Court uses when evaluating evidence collected in a warrantless search and evidence collected pursuant to a warrant).
[4] *State v. Lewis*, 2013 WL 2297031, at *2 (Del. Super. May 20, 2013).
[5] U.S. CONST. amend. IV.

6

probable cause and issued by a neutral magistrate is typically required before the police may search an individual's person or property. A warrantless search is *per se* unreasonable unless one of the exceptions to the warrant requirement applies.[6]

A finding of probable cause must be based on the information that appears within the four corners of the warrant application or the underlying affidavit.[7] Probable cause exists when, considering the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[8] The Court may draw reasonable inferences from the factual allegations in the application or affidavit.[9] When reviewing the validity of a search warrant, this Court gives "great deference" to the issuing magistrate's determination that probable cause supported the warrant.[10]

### 1. The Particularity Requirement

Defendant argues that the Warrant fails to satisfy the particularity requirement. In order to satisfy the particularity requirement, a warrant must

---

[6] *Katz v. United States*, 389 U.S. 347, 356–57 (1967).
[7] *Valentine v. State*, 207 A.3d 566, 570 (Del. 2019). There must be a substantial basis in the affidavit to support a finding of probable cause. *Buckham v. State*, 185 A.3d 1, 16 (Del. 2018).
[8] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).
[9] *Id.*
[10] *State v. Reese*, 2019 WL 1277390, at *3 (Del. Super. Mar. 18, 2019).

describe what the officers believe will be found on a cell phone with as much specificity as is possible under the circumstances.[11]

The Warrant satisfies the particularity requirement. The Warrant limited the scope of the search to certain digital contents of Defendant's cell phone that might have been "used or intended to be used for Murder in the 1st Degree."[12] The Warrant authorized a search for: call logs, SMS messages, MMS messages, social media communications, any/all communication applications, images, GPS locations including WiFi access, and any/all information that may identify suspects or co-conspirators. Further, the Warrant was temporally limited to October 26, 2015 through June 22, 2018.[13]

In addition, the Warrant described the items to be seized "with as much specificity as was possible under the circumstances."[14] Although the Warrant contains a catch-all provision—"digital contents of any and all attached storage devices [] *to include but not limited to*"—the focus of the search remains on information used or intended to be used for First Degree Murder.[15] Further, the second catch-all provision—"all information that may identify suspects or co-conspirators"—is itself limited to evidence of other suspects or co-conspirators.

---

[11] *Wheeler v. State*, 135 A.3d 282, 304 (Del. 2016).
[12] State's Resp. Def.'s Mot. Suppress Ex. C, Sept. 19, 2019.
[13] State's Resp. Def.'s Mot. Suppress Ex. C, Sept. 19, 2019.
[14] *Wheeler*, 135 A.3d at 304.
[15] State's Resp. Def.'s Mot. Suppress Ex. C, Sept. 19, 2019.

The police were looking for evidence connected to First Degree Murder. One of the elements of First Degree Murder is that the perpetrator carried out the offense "intentionally."[16] The items which the police requested to seize—GPS location information, images, information that might identify suspects or co-conspirators, and certain communications—could all reasonably contain inculpatory or exculpatory evidence of Defendant's intent. The time frame was limited to the period of time between when Defendant first encountered one of the witnesses in this case to the date when police apprehended Defendant. Based on the circumstances before the officers, the Court finds that the Warrant described the items to be seized with particularity.[17]

### 2. The Breadth of the Warrant

In *Buckham v. State*, the Delaware Supreme Court found a search warrant for a cell phone invalid because the warrant's scope was broader than the probable cause upon which it was based.[18] The Supreme Court reiterated its concern from *Wheeler v. State* that warrants issued to search electronic devices "call for particular sensitivity given the enormous potential for privacy violations that unconstrained

---

[16] 11 *Del. C.* § 636(a)(1).
[17] This finding is based on the information that was known to the officers at the time the Warrant was issued and that was included in the application for the Warrant. This finding is limited to the specific facts of the instant case.
[18] *Buckham*, 185 A.3d at 18.

searches of cell phones pose."[19]  Although the Supreme Court declined to decide whether the warrant was akin to a general warrant, it found that the warrant failed the particularity requirement and that it was too broad.[20]

In the instant case, the Warrant was too broad for the probable cause upon which it was based.

### a.  Call Logs, SMS Messages, and MMS Messages

The Warrant authorized seizing call logs, SMS messages, and MMS messages from October 26, 2015 to June 22, 2018.  The affidavit accompanying the warrant application ("Underlying Affidavit") does not provide probable cause to seize that type of information for three years.  The Affidavit states that there were two electronic communication devices in the car where Victim #1 was shot.[21]  The Affidavit further states that criminals "often use telephone and cellular phones to communicate with victims, witnesses, and co-conspirators before, during, and after the commission of crimes."[22]  This generalized statement does not create sufficient probable cause to believe that evidence of the offense would be on Defendant's cell phone.[23]  *Even if* this generalized statement created probable cause to seize

---

[19] *Id.* (internal quotation marks omitted).
[20] *Id.* at 18–19.
[21] State's Resp. Def.'s Mot. Suppress Ex. C, ¶ 8, Sept. 19, 2019.
[22] State's Resp. Def.'s Mot. Suppress Ex. C, ¶ 37, Sept. 19, 2019.
[23] *See Buckham*, 185 A.3d at 17 (finding the generalized statement that criminals communicate through cell phones was "particularly unpersuasive" and the statement that the defendant's girlfriend called the victim before she spoke to

10

Defendant's call logs, SMS messages, and MMS messages, it does not justify doing so for three years. Instead, any probable cause that was established in the Underlying Affidavit would be limited to a shorter time period that is temporally closer to the charged offense.[24]

### b. Images

The Warrant authorized seizing images taken between October 26, 2015 and June 6, 2018. The Underlying Affidavit does not provide probable cause to seize the images on Defendant's phone. The only information in the Underlying Affidavit connecting images on Defendant's phone to the Shooting is a generalized statement that cell phones can "capture photographs and videos" and perpetrators will "often" take photographs and videos before and after an incident like the Shooting.[25] Just like the generalized statements in *Buckham*, this general assertion does not provide a substantial basis to support a probable cause finding.[26]

---

police did not provide a basis to suspect that *defendant's* cell phone contained evidence of the offense).

[24] The Underlying Affidavit referred to the time period "before, during, and after the commission" of the offense. The only indication that Defendant might have communicated with Victim #1 before the incident comes from the fact that two electronic devices were found close to Victim #1's body. Thus, the time period "before the commission of the offense" should—based on the facts in the Underlying Affidavit—be limited to the time period immediately before the shooting.

[25] State's Resp. Def.'s Mot. Suppress Ex. C, ¶ 36, Sept. 19, 2019.

[26] *See Buckham*, 185 A.3d at 17 ("Even with the deference we owe to a magistrate's probable cause finding, these sorts of generalized suspicions do not provide a substantial basis to support a probable cause finding.").

11

c.  Social Media Communications, Communication Applications, and GPS Location Information

The Warrant authorized seizing social media communications, any and all communication applications, and GPS location information from October 26, 2015 to June 22, 2018. The Underlying Affidavit provides probable cause to seize the GPS location information. The Underlying Affidavit also provides probable cause to seize the social media communication and communication application information. However, the Underlying Affidavit does not provide probable cause to seize the GPS and communication application information for the three year period.

There is substantial information in the Underlying Affidavit to justify a finding of probable cause for the GPS location information. The Underlying Affidavit describes how a white SUV drove past 1 Lloyd Street a few times prior to the Shooting. The Underlying Affidavit also states that Defendant drives a white SUV and that the police found in Defendant's home a piece of paper with the address "1 Lloyd Street" handwritten on it. Finally, the Underlying Affidavit states that the shotgun shell casings matched shotgun shells purchased by an individual matching Defendant's description, who had the same birthday as Defendant, and who drove a white SUV. Based on these facts, there is a substantial basis to believe that Defendant's cell phone contained GPS location information that could connect Defendant to the Shooting.

12

There is also substantial information in the Underlying Affidavit to justify a finding of probable cause for the social media communication and communication application information. The Underlying Affidavit states that Defendant claimed: i) he used the Craig's List application on his phone to communicate with an individual named Keith on the night of the Shooting; ii) he was with Keith on the night of the Shooting; and iii) he returned to his home around 1:15 am on the night of the Shooting. The Underlying Affidavit contained enough facts for the magistrate to form a reasonable belief that Defendant's social media communications and communication application information would either support or refute Defendant's alibi.

However, the Underlying Affidavit did not contain enough facts to justify obtaining the social media communication information, communication application information, and GPS location information for a three-year period. At most, the Affidavit provides a substantial basis to support a probable cause finding that evidence connecting Defendant to the Shooting could be found in his communication application and GPS information in the hours before and after the Shooting.

## B. Defendant's Consent

The State argues that even if the Warrant is insufficient, Defendant still consented to the search of his cell phone. Consent is a recognized exception to the

13

warrant requirement.[27] The Fourth Amendment requires that an individual's consent not be coerced, explicitly or implicitly.[28] Consent is valid if there is no coercion; if there is coercion—even subtle coercion—then there is no valid consent.[29] The Court analyzes the totality of the circumstances to determine if an individual's consent was voluntary or coerced.[30] The State must prove, by preponderance of the evidence, that Defendant's consent was voluntarily given.[31]

### 1. Voluntary Consent

Defendant verbally consented to the search of his cell phone on June 22, 2018 during his interview with police. During the interview, Defendant confirmed that it was his Samsung Galaxy that police had seized during the search of his home.[32] Defendant told the detectives that his cell phone contained the phone number for Keith, an individual who could verify Defendant's alibi.[33] Without being asked for it, Defendant told the detective the pattern passcode to his cell phone.[34] Defendant

---

[27] *Flonnory v. State*, 109 A.3d 1060, 1063 (Del. 2015).

[28] *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973).

[29] *Id.* ("For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.").

[30] *Id.* at 233.

[31] *State v. Rizzo*, 634 A.2d 392, 395 (Del. Super. 1993); *State v. Gonzalez*, 1991 WL 68946, at *2 (Del. Super. Apr. 19, 1991).

[32] State's Resp. Def.'s Mot. Suppress Ex. B, at 30, Sept. 19, 2019 (Interview #1).

[33] State's Resp. Def.'s Mot. Suppress Ex. B, at 31, Sept. 19, 2019 (Interview #1).

[34] State's Resp. Def.'s Mot. Suppress Ex. B, at 33, Sept. 19, 2019 (Interview #1).

then submitted to a polygraph examination, which he had offered to take.[35] After the polygraph examination, Defendant physically unlocked his cell phone for the officers because the police had been having trouble opening the phone based on Defendant's description of his passcode.[36]

Defendant also signed a consent-to-search form for his cell phone. On June 27, 2018, Detective Reid went to Defendant's home and asked Defendant to sign the consent-to-search form.[37] Prior to signing the form, Defendant did not ask about the return of his cell phone. Defendant signed the form without objection. The form clearly stated that Defendant authorized the search of "all digital contents of the Samsung Galaxy cell phone owned by Glenford Blackwood."[38]

Based on the totality of the circumstances, the Court finds that Defendant voluntarily consented to the search of his cell phone. There is no evidence that the police coerced Defendant to consent to the search of his cell phone on either June 22nd or June 27th. To the contrary, it appears that Defendant was willing to cooperate with the police out of a desire to prove his innocence.

2. *Scope of Consent*

---

[35] State's Resp. Def.'s Mot. Suppress Ex. B, at 30, 34–35, 39, Sept. 19, 2019 (Interview #1).
[36] State's Resp. Def.'s Mot. Suppress Ex. B, at 1, Sept. 19, 2019 (Interview #2).
[37] State's Resp. Def.'s Mot. Suppress Ex. E, Sept. 19, 2019.
[38] State's Resp. Def.'s Mot. Suppress Ex. F, Sept. 19, 2019.

The scope of a consented-to search is governed by the language used in the consent.[39] The Court must determine what a typical, reasonable person would have understood by the exchange between the officer and the suspect.[40] The Court must determine the scope of each of Defendant's consents.

First, Defendant verbally consented to the search of his phone by the police on June 22, 2018. Defendant told Detective Reid that the phone number for a potential alibi witness, Keith, could be found in his phone.[41] Defendant did not know Keith's number; Defendant wanted the police to find the number in his cell phone so that they could verify his alibi.[42] At multiple points during the June 22nd interview, Defendant indicated to the police that he always carries his phone on his person.[43] From this statement, it was reasonable for the police to infer that Defendant wanted the police to check the cell site location information connected to his phone. Defendant confirmed this inference at the November 17, 2019 suppression hearing

[39] *State v. Ellis*, 1991 WL 247729, at *2 (Del. Nov. 4, 1991) (quoting *Ledda v. State*, 564 A.2d 1125, 1129 (Del. 1989)).

[40] *United States v. Tarburton*, 610 F. Supp. 2d 268, 275 (D. Del. 2009).

[41] State's Resp. Def.'s Mot. Suppress Ex. B, at 27, 31, Sept. 19, 2019 (Interview #1); State's Resp. Def.'s Mot. Suppress Ex. B, at 1, Sept. 19, 2019 (Interview #2).

[42] State's Resp. Def.'s Mot. Suppress Ex. B, at 27, 31, Sept. 19, 2019 (Interview #1); State's Resp. Def.'s Mot. Suppress Ex. B, at 1-2, Sept. 19, 2019 (Interview #2). Defendant also told police to contact someone named "Nicki" and a few other people who could also verify his alibi. State's Resp. Def.'s Mot. Suppress Ex. B, at 7, 9, Sept. 19, 2019 (Interview #2).

[43] State's Resp. Def.'s Mot. Suppress Ex. B, at 16, 21, 25, 44, 46, Sept. 19, 2019 (Interview #2).

when Defendant testified that he wanted the police to see that his phone was "pinging" in Glen Mills, Pennsylvania on the night of the Shooting.[44] From the exchange between Defendant and the officers, a reasonable person would understand that Defendant consented to the police searching his phone for the numbers of various potential alibi witnesses and also consented to the police checking the cell site location information connected to Defendant's cell phone. Therefore, the scope of Defendant's consent on June 22nd was limited to certain phone numbers, cell site location information, and communication application information for the purpose of verifying Defendant's alibi.

Second, on June 27, 2018, Defendant signed a consent form allowing the police to search "all [of the] digital contents of" Defendant's cell phone.[45] The scope of Defendant's second consent was much broader than his consent on June 22nd. Although Defendant testified that he still thought the police would be searching his cell phone only to verify his alibi, the language on the consent form is clear and unmistakable. Defendant was provided with ample time to read the consent form and there is no evidence that the police pressured Defendant to sign the form.

---

[44] Letter to Judge Scott from Deputy Attorneys General James K. McCloskey and Joseph S. Grubb Attach 1, at 22:18–21, Jan. 27, 2020 (Excerpt of Defendant's testimony from the November 18, 2019 suppression hearing).
[45] State's Resp. Def.'s Mot. Suppress Ex. F, Sept. 19, 2019.

17

Therefore, Defendant's consent on June 27th permitted the police to search all of the digital contents of Defendant's cell phone without a warrant.

### 3. Effect of Consent

All evidence does not need to be deemed "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Instead, the Court should ask whether, even with the illegal action, the evidence "to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."[46] To apply the fruit of the poisonous tree doctrine when a suspect has given consent to search, there must "first be some causal connection between the unlawful search or seizure and the consent to search."[47]

The Court finds that there is no causal connection between the Warrant and Defendant's consent; Defendant's consent was not obtained by an exploitation of the deficiencies in the Warrant. As discussed above, there are some deficiencies with the Warrant. However, Defendant twice consented to the search of his cell phone without knowing that the police had obtained the Warrant. The police did not use the Warrant as a tool to effectuate Defendant's consent. Instead, the police asked

---

[46] *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).
[47] *Murray v. State*, 45 A.3d 670, 682 (Del. 2012); *see also Lopez-Vazquez v. State*, 956 A.2d 1280, 1293 (Del. 2008) ("Thus, even if there is an illegal search or seizure, direct or derivative evidence, such as consent, may still be admissible if the taint is sufficiently 'purged.'").

18

Defendant for permission to search his cell phone and Defendant consented. Although Defendant's consent on June 22nd was limited in scope, Defendant's consent on June 27th unmistakably allowed for the search of the entire digital contents of Defendant's cell phone.

Defendant has asked this Court to suppress Defendant's internet search history from June 17 to June 22, 2018, his cell site location information from June 16 to June 17, 2018, and a photograph of Defendant. The police obtained this information from the forensic extraction of Defendant's cell phone pursuant to the Warrant. However, separate and apart from the Warrant, Defendant's voluntary consent permitted the police to obtain all of this information. Because Defendant's consent was voluntary and not causally connected to the Warrant, the three challenged items of evidence should not be suppressed.

### C.    Fruit of the Poisonous Tree

The rationale behind the Court's power to exclude evidence that the police have unlawfully obtained is to deter police from violating constitutional and statutory protections.[48] The Court will not reward bad behavior by putting the State in a better position than it would have been in if the police had not engaged in illegal conduct.[49] The corollary to this idea is that the State should not be put into a worse

---

[48] *Nix v. Williams*, 467 U.S. 431, 442–43 (1984).
[49] *Id.* at 443.

19

position "simply because of some earlier police error or misconduct."[50] Therefore, over the years, courts have developed a number of exceptions to the exclusionary rule. The independent source doctrine is the exception most applicable to the instant case.

Under the independent source doctrine, even if police engage in illegal investigatory activity, evidence will be admissible if it is discovered through a source independent of the illegality.[51] According to the U.S. Supreme Court, "so long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply."[52] Defendant has asked this Court to suppress his internet search history from June 17 to June 22, 2018, his cell site location information from June 16 to June 17, 2018, and a photograph of Defendant. The Court finds that the police discovered all of this evidence from an independent source.

The photograph of Defendant was obtained from the forensic extraction of Defendant's cell phone.[53] The photograph also falls within the scope of the search Defendant consented to on June 27th. Therefore, the NCCPD obtained the photograph through an independent source: Defendant's consent.

---

[50] Id.
[51] Norman v. State, 976 A.2d 843, 859 (Del. 2009).
[52] Murray v. United States, 487 U.S. 533, 542 (1988).
[53] State Ex. 2, Jan. 17, 2020.

20

During the second suppression hearing, Detective Reid clarified what evidence the police obtained from Defendant's phone and the manner in which the police obtained this evidence. First, the NCCPD obtained internet search history and cell site location information from Defendant's cell phone by conducting a forensic extraction of the phone pursuant to the Warrant. Detective Reid testified that the NCCPD also obtained Defendant's internet search history and cell site location information from a subpoena sent to Google.[54] To obtain records from Google for Defendant's phone, the police provided Google with the Defendant's cell phone number and the IMEI number. The NCCPD obtained the cell phone number and IMEI number from a source independent of the Warrant. Defendant told Detective Reid his cell phone number during the June 22nd interview. Detective Reid testified that the NCCPD obtained the IMEI number from the forensic extraction of Defendant's cell phone and also by subpoenaing Defendant's cell phone provider, Metro PCS.[55] Defendant's cell phone provider was obtained from the forensic extraction of Defendant's cell phone and from the search of Defendant's

---

[54] State's Resp. Def.'s Mot. Suppress Ex. G, Sept. 19, 2019 (Google Warrant). Detective Reid testified that from his training, knowledge, and experience, Android phones like Defendant's often are tied to a Google account in order to function properly. Detective Reid also testified that the NCCPD obtained Defendant's Google account information both from the forensic extraction of Defendant's cell phone and from searching Defendant's name on Spokeo. State Ex. 4, Jan. 17, 2020.

[55] Def. Ex. 3, Jan. 17, 2020 (Metro PCS Warrant).

21

cell phone pursuant to his consent; Detective Reid testified that the NCCPD can obtain a cell phone's provider information by putting the phone number into a search engine that the NCCPD utilizes for such purposes or by sending out subpoenas to all cell phone providers.

It is clear from Detective Reid's testimony that the police used a source independent from the Warrant to obtain Defendant's internet search history from June 17 to June 22, 2018 and Defendant's cell site location information from June 16 to June 17, 2018. The Court will not exclude evidence that the NCCPD obtained from an independent source simply because the evidence was also obtained from an overly-broad warrant.[56] Accordingly, the Court declines to suppress Defendant's internet search history from June 17 to June 22, 2018 and Defendant's cell site location information from June 16 to June 17, 2018.

## Conclusion

Defendant moved to suppress three items of evidence: Defendant's cell site location information from June 16 to June 17, 2018; Defendant's internet search history from June 17, 2018 to June 20, 2018; and a photograph of Defendant. The Court acknowledges that the photograph of Defendant falls outside of the reasonable time period which would be supported by probable cause. However, Defendant

---

[56] *See Murray*, 487 U.S. at 541 ("Invoking the exclusionary rule would put the police (and society) not in the *same* position they would have occupied if no violation occurred, but in a worse one.").

22

consented to the search of "all digital contents" of his cell phone. Based on the scope of this consent, the police were permitted to obtain the photograph. Finally, although the Court finds that the Warrant authorized a search which was broader than the probable cause upon which it was based, these insufficiencies in the Warrant were cured by Defendant's consent and by the independent sources available to the State. Accordingly, Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

The Honorable Calvin L. Scott, Jr.